UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARK HANNABURY

      Plaintiff,

v.

HILTON GRAND VACATIONS COMPANY, LLC,

      Defendant.

DECISION AND ORDER

Case # 14-CV-6126-FPG

---

Before the Court is a motion to substitute the Estate of Mark Hannabury ("Plaintiff's estate") in the place of Mark Hannabury ("Plaintiff") in this action. ECF No. 29.

## BACKGROUND

Plaintiff passed away on December 19, 2015. *Id.* at 1. In 2014, he had instituted this putative class action against Hilton Grand Vacations Company, LLC ("Hilton") after Hilton allegedly made two unsolicited phone calls to Plaintiff's cell phone. ECF No. 5 at ¶¶ 4, 24. Hilton was apparently calling Plaintiff to try to sell him an interest in its timeshare properties. *Id.* at ¶¶ 20, 23, 25.

By making these two phone calls, Hilton allegedly violated the Telephone Consumer Protection Act of 1991 ("TCPA"). *Id.* at ¶¶ 51–71. As Plaintiff recounts in the Amended Complaint, the TCPA was enacted in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Id.* at ¶ 11 (quoting *Mims v. Arrow Fin. Servs., LLC*, --- U.S. ---, 132 S. Ct. 740, 744 (2012)). To remedy this problem, the TCPA prohibits parties from, among other things, making two types of phone calls. First, under 47 U.S.C. § 227(b), parties cannot make calls to cell phones using any "automatic telephone dialing system," *i.e.*,

autodialers. 47 U.S.C. § 227(b)(1)(A). Second, under 47 U.S.C. § 227(c), parties cannot make more than one call within a twelve-month period to a number listed on a do-not-call registry provided for by the Federal Communications Commission ("FCC").[1] 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2); 47 C.F.R. § 64.1200(e). In the Amended Complaint, Plaintiff alleges that Hilton ran afoul of both Section 227(b) and 227(c); Hilton used an autodialer in making the calls to Plaintiff's cell phone (ECF No. 5 at ¶ 29), and Hilton called Plaintiff's phone twice within twelve months even though his number was listed on the do-not-call registry (*Id.* at ¶ 27).

The TCPA allows a person who has received these violative calls to recover for "actual monetary loss from such a violation, or to receive up to $500 in damages for each such violations, whichever is greater." 47 U.S.C. §§ 227(b)(3), (c)(5). Furthermore, the TCPA allows the recipient of the calls to recover treble damages, so up to $1,500 per call, if the defendant "willfully or knowingly" violates Section 227(b) or 227(c), or the regulations promulgated thereunder. *Id.*

Accordingly, Plaintiff brings four TCPA claims against Hilton. The first claim,[2] brought under 47 U.S.C. § 227(b), seeks $500 in damages per call due to Hilton's use of an autodialer in making the calls. ECF No. 5 at ¶¶ 66–71. The second claim, also brought under 47 U.S.C. § 227(b), seeks treble damages of up to $1,500 per call because Hilton *willfully or knowingly* violated the TCPA in using an autodialer to make the calls. *Id.* at ¶¶ 60–65. The third claim, brought under 47 U.S.C. § 227(c), seeks $500 in damages per call due to Hilton calling Plaintiff

---

[1]   More specifically, the TCPA prohibits parties from making more than one call within a twelve-month period in violation of certain regulations promulgated by the FCC. 47 U.S.C. § 227(c)(5). FCC regulations then provide for a national do-not-call registry, 47 C.F.R. § 64.1200(c)(2), and prohibit any such calls to a "residential telephone subscriber" or "wireless telephone numbers" listed on the registry, 47 C.F.R. §§ 64.1200(c)–(e).

[2]   The Court has recharacterized the order of Plaintiff's claims for clarity. So, for instance, the "first claim" in this Decision is actually the "fourth claim" in the Amended Complaint.

more than once while his number was listed on the national do-not-call registry.[3] *Id.* at ¶¶ 56–59. The fourth claim, also brought under 47 U.S.C. § 227(c), seeks treble damages of up to $1,500 per call because Hilton *willfully or knowingly* violated the TCPA in calling Plaintiff more than once while his number was listed on the do-not-call registry. *Id.* at ¶¶ 51–55. Plaintiff also seeks injunctions prohibiting Hilton from making these types of calls in the future. *Id.* at ¶¶ 54, 63, 69.

Notably, though Plaintiff had not yet moved to certify a class at the time of his death, he sought to bring the action on behalf of two proposed subclasses. ECF No. 5 at ¶¶ 40–41. The two subclasses correspond to the two subsections of the TCPA at issue, 47 U.S.C. §§ 227(b) and 227(c). In accordance with Section 227(b), one subclass covered those who had received calls from Hilton via an autodialer during the class period. *Id.* at ¶ 41. In accordance with Section 227(c), the other subclass covered those who had received more than one call from Hilton while their numbers were listed the do-not-call registry during the class period. *Id.* at ¶ 40. Plaintiff estimated in the Amended Complaint that there were more than one million members in both proposed subclasses. *Id.* at ¶ 42.

## DISCUSSION

As an initial matter, the Court must determine whether state or federal law governs the fundamental issue in this case, which is, simply stated, whether Plaintiff's claims under the TCPA survive his death.

The appropriate source of law has caused some confusion among Plaintiff's estate and

---

[3] Plaintiff does not cite to the correct provisions of the TCPA in his claims based on calls to a number listed on the do-not-call registry. ECF No. 5 at ¶¶ 53, 58 (citing to 47 U.S.C. § 227(b)(3) instead of 47 U.S.C § 227(c)(5)). It is clear to the Court from the rest of the Amended Complaint, however, that the third and fourth claims (*Id.* at ¶¶ 51–59) are not based on Hilton's use of an autodialer, but rather are based on Hilton's calls to a number on the do-not-call registry.

Hilton. In its motion to substitute, Plaintiff's estate simply assumes without discussion that state law governs the survivability of TCPA claims. ECF Nos. 32; 35. It bases this assumption on a Tenth Circuit case, *US Fax Law Center, Inc. v. iHire, Inc.*, 476 F.3d 1113 (10th Cir. 2007), which observed that "Congress expressly directed [in the TCPA] that federal courts apply substantive state law to determine which persons or entities may bring TCPA claims in federal court." ECF No. 32 at 2 (quoting *iHire*, 476 F.3d at 1118). Hilton, meanwhile, is more equivocal about whether state or federal law applies, and has provided the Court with a brief discussion of federal law "[i]n an abundance of caution, and in the event the Court elects to analyze this issue under federal law." ECF No. 34 at 4.

The confusion among Plaintiff's estate and Hilton stems from a few introductory words in both Section 227(b)(3) and 227(c)(5) of the TCPA. Both subsections permit a person to bring an action for $500 in damages—which, again, may be trebled if the caller violates the TCPA willfully or knowingly—"in an appropriate court of [a] State," "*if [such an action is] otherwise permitted by the laws or rules of court of [that] State.*" 47 U.S.C. §§ 227(b)(3), (c)(5) (emphasis added).

Prior to 2012, a variety of circuits assigned an outsized importance to this "if otherwise permitted by . . . [that] State" language. Primarily, they interpreted it to mean that federal district courts lacked federal-question jurisdiction over private TCPA actions. *See e.g., Murphey v. Lanier*, 204 F.3d 911, 914–15 (9th Cir. 2000) ("[T]he statute explicitly allows *states* to choose whether to allow *their courts* to enforce the federally created right. . . . [Thus,] [w]e join the Second, Third, Fourth, Fifth, and Eleventh Circuits in the somewhat unusual conclusion that state courts have exclusive jurisdiction over a cause of action created by a federal statute, the Telephone Consumer Protection Act of 1991.") (emphasis added) (citations and internal quotations omitted). In line with this trend of amplifying the "if otherwise permitted" language,

4

some circuits—including the Tenth Circuit in *iHire*—found that in the event that a private TCPA action was in a federal court under diversity jurisdiction, "Congress [had] expressly directed [via the "if otherwise permitted" language] that federal courts apply substantive state law to determine which persons or entities may bring TCPA claims in federal court." *iHire*, 476 F.3d at 1118.

In 2012, the Supreme Court found in *Mims* that these circuits were ascribing too much significance to the "if otherwise permitted" language. *See Mims*, 132 S. Ct. at 747. In *Mims*, the Court rejected the idea that the language meant that federal courts lacked federal-question jurisdiction over private TCPA actions. *Id.* ("We now hold that Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits."). In doing so, it also observed—critically for the case at hand—that "[b]ecause federal law gives rise to the claim for relief[,] [federal law] specifies the substantive rules of decision." *Mims*, 132 S. Ct. at 747. In other words, in finding that federal courts retained their federal-question jurisdiction over private TCPA claims, *Mims* also provided that federal law governs private TCPA claims in federal court. *See id.*

If there was any lingering confusion after *Mims* about whether state or federal law governs the analysis of private TCPA claims in federal court, the Second Circuit stated explicitly in 2013 that "federal law provides the 'substantive rules' of a TCPA claim in federal court." *Giovanniello v. ALM Media, LLC*, 726 F.3d 106, 113 (2d Cir. 2013) (quoting *Mims*, 132 S. Ct. at 745); *see also Bank v. Indep. Energy Grp. LLC*, 736 F.3d 660, 661 (2d Cir. 2013). According to the Second Circuit, the "if otherwise permitted" language actually means very little; it "merely permits states to open or close their courthouse doors to TCPA claims." *Giovanniello*, 726 F.3d at 114. Stated differently, the language simply allows state courts to decide which plaintiffs may bring a TCPA action in state courts. *Id.* In this way, the "language applies only to TCPA claims in state court;" it has no application to TCPA claims in federal court. *Id.* at 113.

Accordingly, because Plaintiff brought these TCPA claims in federal court, the "if otherwise permitted language" has no application to the case at hand. The assumption by Plaintiff's estate that state law governs survivability is based on pre-*Mims* case law, principally *iHire*, that amplified the "if otherwise permitted" language in Sections 227(b) and 227(c). ECF No. 32 at 2 (citing *iHire*, 476 F.3d at 1118). In short, in the wake of *Mims*, federal courts apply federal law to the substantive issues in a private TCPA claim. *See Mims*, 132 S. Ct. at 747. Thus, this Court applies federal law to determine whether Plaintiff's claims under the TCPA survive his death. *See Vinetz v. Wolpoff & Abramson, L.L.P.*, No. CV 07-8021, 2009 WL 482299, at *1 (C.D. Cal. Feb. 24, 2009) ("To determine the survival of the cause of action, courts turn to the substantive law controlling the suit."); *see also Sinito v. U.S. Dep't of Justice*, 176 F.3d 512, 513 (D.C. Cir. 1999) ("[W]hether a cause of action based on a federal statute survives the death of the plaintiff is a question of federal law.").

Under federal common law, the test for survivorship turns on whether the statutory claims at issue are primarily penal or remedial in nature. *See Estwick v. U.S.Air Shuttle*, 950 F. Supp. 493, 498 (E.D.N.Y. 1996). Statutory claims that are penal in nature extinguish at the party's death, whereas claims that are remedial in nature survive the party's death. *See id; see also Asklar v. Honeywell, Inc.*, 95 F.R.D. 419, 423 (D. Conn. 1982) ("Federal common law has long adopted the traditional rule that actions for penalties do not survive the death of a party.").[4]

Courts look to three factors to determine whether a civil action brought under a statute is

---

[4] This reflects an idea that the plaintiff's successor-in-interest—not just the plaintiff—has suffered a monetary loss when the plaintiff never received a remedial payment. For example, if a deceased plaintiff spent $500 in paper and toner after a company flooded his fax machine with junk faxes, his estate would consequently receive $500 less upon the plaintiff's death if the plaintiff was never repaid by the offending faxer. On the other hand, where the deceased plaintiff simply sought a penalty payment, the estate has not suffered its own corresponding loss. Thus, claims for penalties are extinguished upon the plaintiff's death.

penal or remedial for purposes of survivability: "(a) whether the purpose of the action is to redress individual wrongs or wrongs to the public; (b) whether the recovery runs to the individual or the public; and (c) whether the recovery is disproportionate to the harm suffered." *Estwick*, 950 F. Supp. at 498.

Whether Section 227(b)(3) and 227(c)(5) of the TCPA are penal or remedial in nature, as a matter of federal common law and for purposes of survivability of claims, appears to be a matter of first impression. Notably, in contexts other than survivability of claims, other courts are split as to whether the TCPA is penal or remedial. For instance, the district court in *iHire* found that in the related context of whether a party can assign its TCPA claim to someone else, TCPA claims are penal. *See US Fax Law Ctr., Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005) (holding that Section 227(b)(3) is penal as a matter of Colorado law because, in part, "it was enacted to address a public harm" and the recovery is disproportionate to the harm suffered). On the other hand, some courts have found that in the context of interpreting coverage provided by an insurance contract, TCPA claims are remedial. *See Hooters of Augusta, Inc. v. Am. Glob. Ins. Co.*, 272 F. Supp. 2d 1365, 1375 (S.D. Ga. 2003) *aff'd*, 157 F. App'x 201 (11th Cir. 2005) (holding that Section 227(b)(3) is remedial because one of its purposes is to "redress harms to individuals who are forced to absorb the costs associated with receiving unsolicited faxes" and, additionally, "any award of actual or statutory damages issues to the harmed individual or entity, not to a third party"); *see also Alea London Ltd. v. Am. Home Servs., Inc.*, 638 F.3d 768, 779 (11th Cir. 2011) (holding that the TCPA's treble damages provision is remedial); *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008) (holding that the TCPA's $500 statutory damages provision is remedial).

It is important to make two observations here regarding the cases, primarily out of the

Eleventh Circuit, that have characterized the TCPA as remedial. First, in these cases, insurance companies were arguing as follows: Because the TCPA is penal in nature, and because the insurance policies at issue did not cover penalty payments, they as insurance companies did not have to cover damages awards under the TCPA. *See Hooters*, 272 F. Supp. 2d at 1374–75; *Alea*, 638 F.3d at 775–79; *Penzer*, 545 F.3d at 1306–11. Accordingly, if the courts in *Hooters*, *Alea*, and *Penzer* found that the TCPA was penal in nature, they would necessarily *also* be finding that the TCPA damages awards at issue were not covered by the policies. Such a finding would run directly counter to the general idea that courts should interpret insurance contracts to *include* rather than *exclude* coverage. *See, e.g., Alea*, 638 F.3d at 779 (citing *York Ins. Co. v. Williams Seafood of Albany, Inc.*, 273 Ga. 710, 712 (2001) (observing that in construing insurance contracts, "exclusions will be strictly construed against the insurer and in favor of coverage"). In short, in the insurance context, there are policy considerations at play that counsel against construing the TCPA as penal in nature. These policy considerations are not at play in the context of survivability of claims.

Second, each of these cases dealt with faxes as opposed to telephone calls. *See Hooters*, 272 F. Supp. 2d at 1368; *Alea*, 638 F.3d at 771; *Penzer*, 545 F.3d at 1305. The Court notes here that the TCPA covers both unsolicited faxes and unsolicited telephone calls. *See* 47 U.S.C. § 227(b)(3). Accordingly, in these Eleventh Circuit cases, the courts were able to find that "one of the purposes of the statute is to redress harms to individuals who are forced to absorb the costs associated with receiving unsolicited faxes." *See, e.g., Hooters*, 272 F. Supp. 2d at 1375. In other words, key to the courts' determinations that the TCPA is remedial was that recipients of faxes absorb tangible costs in receiving the fax, namely, the paper and toner required for printing. This sort of tangible cost is not, in all likelihood, absorbed by the recipient of a phone

call.

With this in mind, the Court turns to the first factor for whether an action brought under the TCPA is penal or remedial for purposes of survivability of claims. That is, the Court looks to whether the purpose of the TCPA claims is to redress individual wrongs or wrongs to the public. *Estwick*, 950 F. Supp. at 498.

Here, the Court finds that the primary purpose of a private action under Section 227(b) and 227(c) of the TCPA is to redress wrongs to the public as opposed to individual plaintiffs. 47 U.S.C. §§ 227(b)(3), (c)(5). As the Supreme Court recognized at the outset in *Mims*, Congress specifically enacted the TCPA in response to "[v]oluminous consumer complaints about abuses of telephone technology." *Mims*, 132 S. Ct. at 744. The *Mims* Court went onto note that Senator Hollings, the TCPA's sponsor, set forth his motivations for the bill explicitly on the Senate floor: "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." *Id.* at 752.

In short, the TCPA is meant primarily to deter. Plaintiff acknowledges as much in the Amended Complaint: "The purpose of the Act is not primarily to compensate individuals for their individual damages when they receive such calls. The primary purpose of the TCPA is to halt these practices." ECF No. 5 at ¶ 12. This acknowledgement is, frankly, not surprising given the essential facts in this case. Plaintiff alleges he received two phone calls on successive days in March 2014. ECF No. 5 at ¶ 24. Based on call transcripts, the calls likely lasted around a minute each. ECF Nos. 22-1; 22-2. Seven days later, Plaintiff filed a complaint in this Court seeking $1,000 in damages for the two calls (ECF No. 1), possibly trebled to $3,000, and he sought to bring the action on behalf of, in his estimation, at least two million other people. ECF

9

No. 5 at ¶ 42. It is difficult to see how this lawsuit, which is a powerful reaction to two brief phone calls, is anything other than a tool to redress and deter public wrongs.

Additionally, in looking through the allegations in the Amended Complaint, it is clear that Plaintiff is not seeking actual redress for an individual wrong. In short, nowhere in the Amended Complaint does Plaintiff allege that he suffered any sort of monetary loss as a result of receiving the calls. It is important to reiterate here that the TCPA does allow aggrieved parties to recover their actual monetary loss for offending phone calls. 47 U.S.C. §§ 227(b)(3) (providing for "an action to recover for *actual monetary loss* from . . . a violation, *or* to receive $500 in damages for each such violation, whichever is greater") (emphasis added). Plaintiff, however, declined to even hint in the Amended Complaint that he was at all interested in actual damages. ECF No. 5 at ¶ 68 ("Plaintiff and each member of the Class is entitled to damages of [$]500.00 for each and every call . . . ."). In sum, Plaintiff is plainly not seeking redress for an individual wrong, and thus, the first factor suggests that Plaintiff's TCPA claims are penal.

The second factor looks to whether the recovery runs to the individual or the public. *Estwick*, 950 F. Supp. at 498. This factor deserves little discussion. Section 227 provides that any award of damages, even if the award is trebled, goes to the recipient of the call, not the public. 47 U.S.C. §§ 227(b)(3), (c)(5). Accordingly, the second factor suggests that Plaintiff's TCPA claims are remedial.

Finally, the third factor looks to whether the recovery is disproportionate to the harm suffered. *Estwick*, 950 F. Supp. at 498. The Court also gives relatively short shrift to this factor—a $500 award for a phone call, which could be trebled up to $1,500, is wholly disproportionate to the harm suffered. Once again, it is difficult to even come up with a hypothetical cost for two brief phone calls, and again, the Plaintiff has not alleged that he

absorbed any such cost. Notably, neither Plaintiff nor his estate has attempted to argue that he even suffered a more intangible loss, *e.g.*, business lost when Hilton allegedly tied up Plaintiff's phone. The reality is that the TCPA's damages provision is specifically designed to be disproportional to the harm suffered; such disproportion both deters the violative conduct and "encourage[s] victims to bring suit to redress violations." *Universal Underwriters Ins. Co. v. Lou Fusz Auto. Network, Inc.*, 300 F. Supp. 2d 888, 893-94 (E.D. Mo. 2004) *aff'd*, 401 F.3d 876 (8th Cir. 2005). Accordingly, the third factor suggests that Plaintiff's claims are penal.

Based on a weighing of these three factors, the Court finds that Plaintiff's TCPA claims are penal in nature. Only one of the three factors weighs in favor of characterizing the claims as remedial, and that factor is not enough to convince the Court that the claims are remedial in nature. In short, while an actual award under the TCPA would indeed flow to an individual as opposed to the public, the *benefit* of the award would primarily flow to the public by punishing and deterring the prohibited conduct. Additionally, especially in the context of a telephone call as opposed to a fax, the damages award is disproportional to the harm suffered. For these reasons, the claims here are penal and abate upon the Plaintiff's death.

Finally, the Court notes that in the Amended Complaint, Plaintiff sought injunctions prohibiting Hilton from making calls prohibited under Section 227(b) and 227(c) in the future. *Id.* at ¶¶ 54, 63, 69 ("Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendant in the future."); 47 U.S.C. §§ 227(b), (c).

First, with regard to future calls specifically to Plaintiff's phone, the Court observes that under Article III of the Constitution, it only has jurisdiction over "actual cases or controversies." *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983). In order to satisfy the case-or-

controversy requirement, "a party must, at all stages of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999). Thus, "if an event occurs during the course of the proceedings or on appeal that makes it impossible for the court to grant any effectual relief whatever to a prevailing party, we must dismiss the case" as moot. *United States v. Blackburn*, 461 F.3d 259, 261 (2d Cir. 2006) (citations and internal quotations omitted).

Here, Plaintiff's death makes it impossible for the Court to grant effectual relief in terms of the sought-after injunction. *See ABN Amro Verzekeringen BV v. Geologistics Americas, Inc.*, 485 F.3d 85, 94 (2d Cir. 2007) (observing that when "the plaintiff dies or ceases to be subject to the condition that caused his deprivation before his request for prospective injunctive relief is resolved, his claims may in some circumstances become moot"); *see also Rhodes v. Stewart*, 488 U.S. 1, 4 (1988) (finding that after a plaintiff died, his case seeking a "modification of prison policies . . . could not in any way have benefited [him]," and thus the case was moot). Simply stated, an injunction prohibiting Hilton from making calls to Plaintiff in the future no longer benefits him or the estate. Thus, Plaintiff's claims for injunctions are moot.

Second, with regard to future calls to members of the proposed subclasses, the general rule in the Second Circuit is that "if the claims of the named plaintiffs become moot prior to class certification, the entire action becomes moot." *Comer v. Cisneros*, 37 F.3d 775, 798 (2d Cir. 1994). No class had been certified at the time of Plaintiff's death, so the rest of the action is moot. There are a few exceptions to this general rule, but none of them apply here. *See id.* at 799 (setting forth the exceptions).

In sum, given that Plaintiff's claims for money damages abated upon his death, the remaining part of this action is moot.

12

## **CONCLUSION**

For the foregoing reasons, the motion to substitute filed by Plaintiff's estate (ECF No. 29) is DENIED. There is no longer a plaintiff in this case nor anyone who could substitute as the Plaintiff. Accordingly, the other pending motions (ECF Nos. 12; 17) are DENIED AS MOOT and the case is dismissed. The Clerk of the Court is directed to close this case.

IT IS SO ORDERED.

DATED:   March 25, 2016
         Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court